**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MICRO FOCUS (US), INC. <br> One Irvington Center <br> 700 King Farm Boulevard, Suite 125 <br> Rockville, MD 20850-5736 <br> (Montgomery County) <br><br> MICRO FOCUS IP DEVELOPMENT <br> LIMITED <br> The Lawn, 22-30 Old Bath Road <br> Newbury, Berkshire RG14 1QN, UK <br><br> Plaintiffs, <br><br> v. <br><br> THRYV, INC. <br> 2200 W. Airfield Drive <br> DFW Airport, TX 75261 <br><br> **Serve on:** <br><br> The Corporation Trust Company <br> Corporation Trust Center <br> 1209 Orange Street <br> Wilmington, DE 19801 <br><br> Defendant. | Case No. 21-cv-1908 |

## ORIGINAL COMPLAINT

Plaintiffs Micro Focus (US), Inc. ("Micro Focus (US)") and Micro Focus IP Development Limited ("Micro Focus IP," and, collectively with Micro Focus (US), "Micro Focus") file this Original Complaint against Defendant Thryv, Inc. ("Thryv"), and in support of its claims respectfully alleges the following:

1

**Parties**

1. Micro Focus (US) is a Delaware corporation with its principal place of business in Rockville, Maryland.

2. Micro Focus IP is a company registered in England with its registered address in Newbury, Berkshire, England.

3. Thryv is a Delaware corporation with its principal place of business in Tarrant County, Texas. Thryv can be served with process through its registered agent The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

**Jurisdiction and Venue**

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1338 (Copyright Act) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

5. This Court has personal jurisdiction over Thryv because Thryv consented to "the exclusive jurisdiction of the courts of the State of Maryland," in Paragraph 17 of the parties' End User License Agreement. Exhibit A, p. 6, ¶ 17.

6. This Court also has personal jurisdiction over Thryv because Thryv is registered to do business and regularly conducts business in the State of Maryland.

7. Venue is proper under 28 U.S.C. § 1391.

**Factual Background**

8. Micro Focus (US) is a leader in business enterprise computer software and is a United States subsidiary of Micro Focus International plc, a public limited company based in the United Kingdom. Micro Focus (US) serves thousands of customers and has been doing business since the 1970s. Micro Focus IP owns the right to license the distribution of various software products, including the software that is the subject of this suit. Pursuant to various distributor

agreements, Micro Focus IP has granted Micro Focus (US) the right to market and distribute these software products in the US market.

9. On October 30, 2013, Micro Focus (US) executed Solution Order #528170-3-10 with Dex One Service, Inc. and SuperMedia LLC (predecessors to Thryv). The Solution Order incorporated Micro Focus's standard 2009 End User License Agreement known as LIC-GEN-17 ("EULA") to license various COBOL-related software products from Micro Focus. On January 29, 2015, the parties executed a Volume License Addendum (the "VLA"), which amended and adopted the existing EULA to provide for certain volume licenses. The VLA and EULA are collectively attached as Exhibit A and referred to as the "Agreement."

10. Pursuant to the Agreement, Thryv licensed three specific software products (the "Licensed Software"): (1) Server Express v. 5.1 – Named User Licenses; (2) Application Server for Server Express v4.0 – Server License for CPUs Licenses (Cores); and (3) Server for COBOL v5.1 – Server License for CPUs Licenses (Cores). Exhibit A, p. 1. The Agreement provides an unlimited license for the Licensed Software during the 12-month term of the Agreement. Exhibit A, pp. 1-2.

11. The Agreement prohibits Thryv from "[u]s[ing] the Licensed Software in a manner other than as specifically permitted in this License Agreement." Exhibit A, p. 4, ¶ 2.11. Pursuant to the Agreement, Thryv is obligated to:

> (i) keep records of and provide the location, model and serial number of any and all machines on which the Licensed Software is installed or from which the Licensed Software is accessed, and the names of and how many users are accessing the Licensed Software,
>
> (ii) implement a reasonable mechanism or process to ensure that [Thryv's] use of the Licensed Software does not exceed the number of licenses granted,

> (iii) take all necessary steps to destroy or erase all Licensed Software codes, programs and other proprietary information before disposing of any media containing the Licensed Software, and
>
> (iv) promptly provide written notice to [Micro Focus] if [Thryv's] usage exceeds the license granted."

Exhibit A, p. 4, ¶ 3.

12. Under the Agreement, Micro Focus was entitled to audit Thryv's usage in order to determine whether Thryv is exceeding the license granted. Exhibit A, p. 4, ¶ 3.

13. If Thryv "exceeds the license granted, without prejudice to any other rights or remedies [Micro Focus] may have, including without limitation injunctive relief, [Thryv] agrees to pay [Micro Focus] the then current license and maintenance fees for the use of the additional licenses." Exhibit A, p. 4, ¶ 3. If the licensee "exceeds the license granted by more than five percent (5%), [Thryv] shall also reimburse [Micro Focus] for the reasonable cost of [the] audit in addition to other amounts due." *Id.*

14. Pursuant to the Agreement, if Thryv updates to a new version of software, "the license granted to such prior version and/or release shall terminate after a ninety (90) day transition period from such installation and only the license to such updated and/or upgraded Licensed Software shall continue." Exhibit A, p. 6, ¶ 17.

15. Within six months of the expiration of the one-year term of the VLA, Thryv was required to provide written certification to Micro Focus of "the total deployment (including Platform) of the Licensed Software" and "upon and subject to written verification of such Certification by the director of Micro Focus, such deployment shall be the maximum licensed deployment for the Licensed Software on a perpetual basis subject to all other terms and conditions of [the Agreement]." Exhibit A, p. 1.

16. The Agreement provides a specific mechanism for such Certification and states:

4

> The total deployment and perpetual license grant for any given Licensed Software shall be based on the license type for such product as follows:
>
> For Licensed Software licensed on a named user basis, the total deployment shall be the average number of unique users who have used or accessed such Licensed Software during the three (3) month period immediately preceding the Certification Date ("Unique Users") and such number shall constitute the number of licensed named users going forward. For Licensed Software licensed on a processor basis (e.g., Core), the total deployment shall be the number of Cores accessible by the applicable Licensed Software as of the Certification Date.

Exhibit A, p. 1.

17. In June 2016, Thryv reached out to Micro Focus to request a form for the required Certification. Micro Focus provided a form Excel spreadsheet that divided the list of deployments by "Development" and "Runtime." The spreadsheet included footnotes making clear that "Development" referred to the Licensed Software deployed on a named user basis and that "Runtime" referred to the Licensed Software deployed on a processor or core basis. The form incorporated the exact language from the Agreement regarding how to calculate the number of deployments.

18. On July 29, 2016, Thryv provided written Certification in the format requested by Micro Focus. Thryv's certification identified, among other things, 7200 users for Server Express v5.1 for HP-UX under the "Development" section. Under the "Runtime" Section, the certification identified 376 cores for Application Server for Server Express v4.0 for AIX and 128 cores for Server for COBOL v.5.1 for HP-UX.

19. The Agreement expressly states that the deployment of software identified in the certification "shall be the maximum licensed deployment for the Licensed Software on a perpetual basis." Exhibit A, p. 1.

5

20. As permitted under the Agreement, in November 2018, Micro Focus initiated a software license verification audit and engaged Deloitte to work directly with Thryv to conduct that audit. Exhibit A, p. 4, ¶ 3. In reliance upon information provided to it by Thryv, Deloitte presented the preliminary results of the audit to Micro Focus and Thryv in December 2019. Thryv did not dispute the audit at that time.

21. In February 2020, Micro Focus provided Thryv with an Audit Comparison Summary that expressly identified Thryv's COBOL over-deployment. That summary identified two categories of Micro Focus software that were deployed by Thryv that were not licensed by the Agreement. Specifically, at some point after Thyrv provided the July 29, 2016 Certification, Thryv apparently deployed 9 cores of Micro Focus products Application Server for OCDS 4.1.40 and 314 cores of Server for COBOL v5.0. Thryv had also deployed 160 named user licenses of Micro Focus Product Server Express v4.0sp2, despite having a license for, at most, 5 named users. These products were not subject to the Agreement, and Thryv's deployment was and is unlicensed. In addition, the Audit Comparison Summary revealed that at some point after the July 29, 2016 Certification, Thryv significantly over-deployed software expressly licensed by the Agreement. More specifically, at some point between the July 29, 2016 Certification and the date of the audit, Thryv had deployed the following additional software that exceeded Thryv's entitlement under the Agreement:

| Software | Entitlement | Users/Cores Installed |
| --- | --- | --- |
| Application Server for Server Express v4.0 (HP-UX) | 38 | 320 |
| Server for COBOL v5.1 (HP-UX) | 132 | 314 |

22. Micro Focus has expended considerable effort and expense in developing and promoting the Licensed Software and other Micro Focus products.

6

23.     As a result of Micro Focus's extensive efforts, the Licensed Software consists of valuable, proprietary products and the software, its structure, sequence, and origin are valuable trade secrets of Micro Focus.

24.     The Licensed Software contains material wholly original to Micro Focus IP and consists of copyrightable subject matter under the U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

25.     Micro Focus IP owns, among others, the following U.S. Copyright Registrations for the products at issue in this lawsuit:

| Registration No. | Description of Copyrighted Work |
|---|---|
| 2008  TX0007503833 | Server Express v5.1 |
| 2009  TX0007531060 | Server Express v5.1 WS3 |
| 2010  TX0007313931 | Server Express v5.1 WS5 |
| 2011  TX0007634701 | Server Express v5.1 WS6 |
| 2003  TX0006106489 | Application Server for Server Express v4.0 |
| 2006  TX0006867848 | Server for COBOL |
| 2003  TX0006106488 | Server Express v4.0 |

26.     Thryv's unlicensed deployment and over-deployment of Micro Focus's software was discovered by and documented in the audit, and as a result, Thryv is required to compensate Micro Focus per the Agreement in the amount of the "then current license and maintenance fees for the use of the additional licenses."  Exhibit A, p. 4, ¶ 3.

27.     Thryv has refused to remit payment for the additional licenses or maintenance for its additional deployments, in violation of the audit provision in the Agreement.

28.     Until receiving the audit results in December 2019, Micro Focus was unaware of Thryv's improper actions.  At no time prior to the audit did Thryv notify Micro Focus regarding

7

actions that failed to comply with the Agreement or that violated Micro Focus's intellectual property rights. Thryv's breach of the Agreement and its unlicensed deployment of Micro Focus's products are ongoing. Thryv continues to use and benefit from Micro Focus's software on a continuing basis.

29. Thryv has benefitted from its actions. Among other things, Thryv saved the costs of implementing internal controls and tracking and monitoring installations, and Thryv saved licensing fees by providing access to Licensed Software and other Micro Focus products to people and on devices for whom Thryv had not purchased licenses.

30. Thryv's ongoing infringement of Micro Focus's copyrights and ongoing breaches of the Agreement have injured and continue to injure Micro Focus.

## COUNT I
### (Copyright Infringement)

31. Micro Focus realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

32. Micro Focus IP is the owner of all rights, registered and common law, to the copyrights in and to the Licensed Software and other Micro Focus products, including but not limited to the components of the Licensed Software, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101, *et seq.*

33. Thryv's installation, copying, and deployment of the Licensed Software and other Micro Focus products exceeded the scope of the Agreement and Thryv's licenses, and infringes and continues to infringe Micro Focus IP's exclusive rights granted by 17 U.S.C. § 106.

34. Thryv's installation, copying, and deployment of Micro Focus's products for which Thryv has no licenses infringes and continues to infringe Micro Focus IP's exclusive rights granted by 17 U.S.C. § 106.

35. Thryv has knowingly, willfully, and deliberately infringed Micro Focus IP's copyrights in the Licensed Software and other Micro Focus products and continues to do so.

36. Micro Focus IP has been injured and continues to be injured as a result of Thryv's acts of copyright infringement. Micro Focus IP has been damaged in an amount to be proven at trial. Micro Focus IP's damages include (i) actual damages and profits that are not attributable to actual damages, or statutory damages, as permitted under 17 U.S.C. § 504; and (ii) full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

37. Micro Focus IP's remedy at law is not itself adequate to compensate Micro Focus IP for injuries inflicted and threatened by Thryv. Micro Focus IP is entitled to a preliminary and permanent injunction as permitted by 17 U.S.C. § 502(a).

## COUNT II
### (Breach of Contract)

38. Micro Focus realleges and incorporates by reference the proceeding paragraphs of this Complaint as if fully set forth herein.

39. The Agreement constitutes a valid, enforceable contract between Micro Focus (US) and Thryv.

40. Thryv has possession of the Licensed Software, including but not limited to (1) Server Express v. 5.1 – Named Use Licenses; (2) Application Server for Server Express v4.0 – Server License for CPUs Licenses (Cores); and (3) Server for COBOL v5.1 – Server Licenser for CPUs Licenses (Cores). The supply of the Licensed Software and the license terms constituted an offer by Micro Focus to sell a license.

41. By its actions, Thryv accepted the terms of Micro Focus (US)'s offer to sell licenses, creating an agreement for which payment was expected.

42. The rights to the Licensed Software are conferred by and controlled by the Agreement.

43. The Agreement was supported by valid consideration, including but not limited to the license fees paid by Thryv and the licenses delivered by Micro Focus (US).

44. Thryv has breached and continues to breach the Agreement by refusing to pay Micro Focus (US) the current license fees for the deployment of the additional licenses.

45. Thryv has breached and continues to breach the Agreement by refusing to pay Micro Focus (US) maintenance fees for the deployment of the additional licenses.

46. Thryv has breached and continues to breach the Agreement by failing to implement a reasonable mechanism or process to ensure that Thryv's deployment of the Micro Focus software did not exceed the scope of rights provided in the licensing agreements.

47. Thryv has breached and continues to breach the Agreement by failing to promptly provide written notice to Micro Focus (US) when Thryv exceeded the licenses granted.

48. As a direct and proximate result of these and other express and implied breaches of the contracts, Micro Focus (US) suffered and is continuing to suffer damages, in an amount to be determined at trial.

49. Micro Focus (US)'s remedy at law is not itself adequate to compensate Micro Focus (US) for injuries inflicted and threatened by Thryv.

## COUNT III
### (Unjust Enrichment)

50. Micro Focus realleges and incorporates by reference proceeding paragraphs of this Complaint as if fully set forth herein.

51. Micro Focus conferred benefits upon Thryv, namely a limited right to access and copy Micro Focus's software.

52. Thryv was aware of, and appreciated, these benefits by accessing and copying the Licensed Software and using it since 2016.

53. Thryv's access to and deployment of the Licensed Software in excess of the scope of its licenses to these products resulted in an injustice such that it would be inequitable for Thryv to retain the benefit of the Micro Focus software without the paying of value in return.

54. Thryv is obligated to pay to Micro Focus damages for Thryv's unjust enrichment by its access to and deployment of Micro Focus software.

## DEMAND FOR JURY TRIAL

55. Pursuant to Fed. R. Civ. P. 38(b), Micro Focus demands a trial by jury on all issues triable as of right.

## REQUEST FOR RELIEF

WHEREFORE, Micro Focus respectfully requests that the Court:

a. Enter judgment in Micro Focus's favor on all counts;

b. Enter an order terminating the licenses and requiring Thryv to remove all copies of all Micro Focus software that Thryv over-deployed from its computing system, as required under the Agreement;

c. Enter an injunction enjoining and restraining Thryv, its officers, directors, agents, employees, representatives and all persons acting in concert with them, requiring them to (a) cease providing devices with access to Micro Focus software for which Thryv failed to provide licenses and (b) cease engaging in further acts constituting breach of contract;

d. Award damages to Micro Focus in an amount to be determined by the Court as required by the Agreement;

e.  Award damages to Micro Focus IP for its actual damages resulting from Thryv's infringement of Micro Focus IP's copyrights, including but not limited to fair market value licensing fees, and an award of all profits received, directly or indirectly, by Thryv in connection with each infringement pursuant to 17 U.S.C. § 504(b);

f.  Award statutory damages in the maximum amount permitted by law pursuant to 17 U.S.C. § 504(c), the Agreement, or any other basis permitted by law or the equitable powers of the Court;

g.  Award costs and reasonable attorneys' fees to Micro Focus to the extent authorized by statute (including 17 U.S.C. § 505), contract, or equitable grounds;

h.  Award Micro Focus pre- and post-judgment interest to the extent allowed by law;

i.  Grant such other relief as the Court deems appropriate and just.

Dated: July 29, 2021                                Respectfully submitted,

*/s/ Michael B. MacWilliams*
Michael B. MacWilliams, Bar No. 23442
MBMacWilliams@Venable.com
Elizabeth C. Rinehart, Bar No. 19638
ECRinehart@Venable.com
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
Tel: (410) 244-7400
Fax: (410) 244-7742

*Attorneys for Plaintiffs*